IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
SOUTHERN DIVISION

NO. 7:10-CV-172-FL

MORGAN KELLY; PAMELA KELLY;          )
and TERRY KELLY,                     )
                                     )
                    Plaintiffs,      )
                                     )
        v.                           )                    ORDER
                                     )
UNITED STATES OF AMERICA,            )
                                     )
                    Defendant.       )
                                     )

This matter comes before the court on plaintiffs' motions to compel (DE # 37, 47).

Plaintiffs' motions have been fully briefed and the issues raised are ripe for review. For the reasons

that follow, plaintiffs' motions are granted in part and denied in part. Plaintiffs' motions for oral

argument are denied.[1]

**STATEMENT OF THE CASE**

This is an action pursuant to the Federal Tort Claims Act, 28 U.S.C. §§ 2671, *et seq.*

("FTCA"), to recover damages for injuries allegedly suffered by Morgan Kelly, a minor, at United

States Marine Corps Base Camp Lejeune ("Camp Lejeune"). Morgan Kelly's parents, Pamela Kelly

and Terry Kelly, join their daughter as plaintiffs in this action.

Plaintiffs filed complaint on September 2, 2010. Defendant filed answer on December 29,

2010, stating several affirmative defenses. The court conducted a telephonic scheduling conference

---

[1] The court denies plaintiffs' motions for oral argument, as the parties' briefs adequately address the issues for
the court to consider.

on February 23, 2011, and afterward entered a preliminary case management order providing for an initial period of written discovery to be completed by April 1, 2011, and for all Rule 12 motions to be filed by May 15, 2011. Further discovery in the case was stayed pending resolution of any motions pursuant to Rule 12.

On May 15, 2011, plaintiffs filed motion to strike defendant's affirmative defenses pursuant to Rule 12(f), or in the alternative, for partial judgment pursuant to Rule 12(c). On July 6, 2011, defendant filed motion for judgment on the pleadings. The motion asserts that the court does not have subject matter jurisdiction over the instant matter based on the discretionary function exception to the FTCA, 28 U.S.C. § 2680(a). On August 11, 2011, the court granted in part and denied in part plaintiffs' motion to strike. The court allowed defendant's affirmative defense as to plaintiff Pamela Kelly's waiver of her daughter, Morgan's, claims.

On September 26, 2011, the court entered second consent order amending the preliminary case management order, lodged on the docket at entry 36. The second consent order set forth certain deadlines for the conduct of limited discovery, as requested by plaintiffs, relating to defendant's Rule 12(c) discretionary function motion. (DE # 36, ¶ 1.) The order further provided that other disputed discovery matters "not raised, adjudicated, or that are otherwise deferred shall not be deemed waived in the event discovery proceeds after resolution of defendant's Rule 12(c) motion or the continuation of discovery upon further order of the Court." (Id. ¶ 4.)

On January 5, 2012, upon being alerted that multiple discovery disputes had arisen in this case, particularly the filing of the instant motions to compel on October 11, 2011, and January 3, 2012, the court entered order staying briefing on defendant's motion for judgment on the pleadings.

2

# BACKGROUND

In July, 2007, Morgan Kelly, then a fifteen-year-old high school student, was a cadet in the Navy Junior Reserve Officer Training Corps ("NJROTC") program at her high school. As part of the program, she voluntarily attended an orientation visit to Camp Lejeune. The United States Marines Corps ("the Marines") required all NJROTC cadets attending the orientation visit to sign a waiver, which was drafted by the Marines, before being allowed to enter Camp Lejeune. The Marines also required the parent or guardian of any cadet who was a minor to sign the waiver. Morgan Kelly and her mother, Pamela Kelly, both signed the waiver, which is dated July 20, 2007.

The NJROTC group arrived at Camp Lejeune on July 23, 2007. On July 25, 2007, Morgan Kelly participated in scheduled training activities at the confidence course. On the last obstacle, called the "Slide for Life" ("SFL"), Morgan Kelly fell as she was climbing and suffered unspecified but allegedly serious injuries. Plaintiffs seek damages in excess of ten million dollars ($10,000,000.00).

# DISCUSSION

A.      Standard of Review

Generally, Federal Rule of Civil Procedure 26 governs discovery practice in federal court. Rule 26(b) provides that "[u]nless otherwise limited by court order, the scope of discovery is as follows: Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense - including the existence, description, nature, custody, condition, and location of any documents or other tangible things and the identity and location of persons who know of any discoverable matter . . . Relevant information need not be admissible at trial if the

discovery appears reasonably calculated to lead to the discovery of admissible evidence."  Fed. R. Civ. P. 26(b)(1).

In this case, both parties acknowledge that discovery has proceeded on a limited basis, specifically as to the arguments raised in defendant's motion for judgment on the pleadings regarding the discretionary function exception to the FTCA.  A general understanding of the exception as well as interpretation of it in the case law is necessary to set forth here in order to clearly delineate the limited scope of discovery to determine whether plaintiffs' requests for discovery are reasonable or are outside of the permissible scope.[2]

Title 28 of United States Code, section 2680 sets forth the discretionary function exception to the FTCA.  The statute provides in relevant part:

> The provisions of this chapter and section 1346(b) of this title shall not apply to –
> (a) Any claim based upon an act or omission of an employee of the Government, exercising due care, in the execution of a statute or regulation, whether or not such statute or regulation be valid, or based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the Government, whether or not the discretion involved be abused.

28 U.S.C. § 2680(a).  The Supreme Court has established a two-step analysis for applying the discretionary function exception in United States v. Gaubert, 499 U.S. 315 (1991) and Berkovitz v. United States, 486 U.S. 531 (1988).  The Fourth Circuit has interpreted the same in Smith v. Wash. Metro Area Transit Auth., 184 F. App'x 311, 315 (4th Cir. 2006):

> The Supreme Court has set forth a two-tiered analysis for determining whether official conduct is discretionary for purposes of § 2680(a). First, "a court must consider whether the action is a matter of choice for the acting employee . . . . [C]onduct cannot be discretionary unless it involves an element of judgment or

---

[2] Because briefing has been stayed on defendant's motion for judgment on the pleadings, the court is mindful that plaintiffs have not had opportunity to contest the legal authority cited in defendant's brief regarding the discretionary function exception.

4

choice." [Berkovitz, 486 U.S. at 536]. Thus, "when a federal statute, regulation, or policy specifically prescribes a course of action for an employee to follow," the discretionary function exception does not apply. Id. We have emphasized that the inquiry focuses not so much on the source of the restriction as on whether the restriction imposes mandatory duties. See Perkins v. United States, 55 F.3d 910, 914 (4th Cir.1995) ("[F]ailure to perform a mandatory function is not a discretionary function."). Accordingly, where an agency official contravenes internal agency guidelines that impose mandatory duties, the discretionary functions exception poses no bar to the government's liability. See Blakey v. U.S.S. Iowa, 991 F.2d 148, 152-53 (4th Cir.1993) (examining internal JAG guidelines to determine whether conduct involved discretion); see also Ignatiev v. United States, 238 F.3d 464, 467 (D.C. Cir.2001) ("[I]nternal guidelines can be an actionable source of a mandatory obligation under the FTCA.").

Second, "even if the challenged conduct involves an element of judgment, a court must determine whether that judgment is of the kind that the discretionary function exception was designed to shield, that is, decisions grounded in social, economic, and political policy." Smith I, 290 F.3d at 208 (internal quotation marks omitted). Only those decisions "based on considerations of public policy" are protected.[Gaubert, 499 U.S. at 323].

Smith, 184 F. App'x at 315; see also Hawes v. United States, 409 F.3d 213, 217 (4th Cir. 2005).[3]

The inquiry concerning the second prong

 . . . focuses "not on the agent's subjective intent in exercising the discretion . . . , but on the nature of the actions taken and on whether they are susceptible to policy analysis." [Gaubert, 499 U.S. at 325]. Thus, "a reviewing court in the usual case is to look to the nature of the challenged decision in an objective, or general sense, and ask whether that decision is one which we would expect inherently to be grounded in considerations of policy." Baum v. United States, 986 F.2d 716, 720-21 (4th Cir.1993). Moreover, when a statute, regulation, or agency guideline permits a government agent to exercise discretion, "it must be presumed that the agent's acts are grounded in policy when exercising that discretion." [Gaubert, 499 U.S. at 324].

Suter v. United States,  441 F.3d 306, 311 (4th Cir. 2006).  Whether or not something is grounded

in policy asks if a decision was based on public policy.  Hawes, 409 F.3d at 218.  "Public policy"

---

[3]  As noted by defendant in its motion for judgment on the pleadings, the Hawes decision was vacated when rehearing in banc was granted.  However, before rehearing, the appellant dismissed the matter.  The decision has been cited favorably by district courts from this circuit.  See, e.g., Butler v. United States, 2010 WL 731139 (M.D.N.C. 2010).

in this context means involving considerations of economic, social, or political policy. Gaubert, 499 U.S. at 323. The Fourth Circuit has interpreted Gaubert to require a court to look to the nature of the challenged decision in an objective or general sense and ask whether "that decision is one which we would expect inherently to be grounded in considerations of policy." Indemnity Ins. Co. of N. Am. v. United States, 569 F.3d 175, 180 (4th Cir. 2009) (citing Baum, 986 F.2d at 720-21). When a "statute, regulation, or agency guideline permits a government agent to exercise discretion, 'it must be presumed that the agent's acts are grounded in policy when exercising that discretion.'" Id. (quoting Suter, 441 F.3d at 311).

Much of the law cited herein is also cited in defendant's motion for judgment on the pleadings. The court notes, however, an argument made by defendant in its response to plaintiffs' first motion to compel, that "[o]nce the Court satisfies itself that - under the first prong of the discretionary function analysis - nothing stripped the Marines of their discretion to construct and operate the SFL obstacle, it need not look at specific facts to determine that the Marines exercised their discretion pursuant to policy reasons under the second prong." (Pls.' Resp. First Mot. Compel 3.) The court's review of the case law interpreting the discretionary function exception reveals that defendant's contention is incorrect. See Suter, 441 F.3d at 310-11 (noting that if there is no statute specifically prescribing a course of action, and therefore an element of judgment or choice exists, *then* the court must determine whether the judgment is the kind that the discretionary function exception was designed to shield). Defendant's motion for judgment on the pleadings also notes that if the court does not find a statute that stripped the Marines of discretion, then "the court must determine if the United States acted in a way that exercised its broad discretion in furtherance of some policy." (Def.'s Mot. J. On Pldgs. 8.)

6

Thus, when the court decides the applicability of the discretionary function exception, if no statute exists under the first prong proscribing conduct, then the court will move to the second step, contrary to what defendant's response suggests. While the court does not decide whether the discretionary function exception applies to this case at this time, this discussion is necessary since the scope of limited discovery in this case is shaped entirely by the discretionary function analysis. Specifically, discoverable information would include material related to the first and second prongs of the analysis, including the existence of any statutes, regulations, or other authority, if any, proscribing certain behaviors with regard to the operation of the SFL in Navy ROTC exercises. Also discoverable would be information or materials related to the second prong, thus public policy implications, if any, of the operation of the SFL. These observations set the parameters for what is discoverable in this limited period of discovery. With these principles in mind, the court turns to the various discovery disputes between the parties.

B.    Analysis

    1.    First Motion to Compel

        a.    Interrogatory No. 2

The court agrees that generally, requests for information regarding the waiver are outside of the limited scope of discovery for the discretionary function exception. The court's preliminary case management order provided that a period of written discovery was to commence, with the exception that plaintiffs may inspect and examine the originals of any written releases or waivers that defendant has in its possession. The inspection of originals appears to have occurred. (Govt. Resp. Pls' First Mot. Compel 3.) Even after amendment of the preliminary case management order, memorialized at docket entry 36, the request appears to be outside of the scope of limited discovery,

as the waiver issue is not one arising from defendant's motion for judgment on the pleadings.

Plaintiffs also ask the court to compel defendant to "fully identify witnesses," which appears to be a request to compel defendant to identify an individual under plaintiffs' definition of "identify," which includes giving the full name, present or last known address(es) where service of process could be obtained, all phone numbers, all email addresses, business affiliations and positions held, for individuals in the armed forces, the rank and unit of assignment, for civilian employees of the United States, title, pay grade or level, and command. (Pls.' First Mot. Compel 2 n.1.) This definition of "identify" does go beyond that of what Rule 26(a)(1) requires, and plaintiffs cite no authority for imposing a higher burden on defendant. Where it appears the United States has given various names of individuals who are represented persons, plaintiffs are free to contact those individuals through counsel or notice a deposition of the individuals to obtain the information they seek.

To the extent plaintiffs argue that the United States has impermissibly identified individuals that are represented by the United States for purposes of this litigation, the court finds no evidence of the same. Defendant's initial disclosures identify represented persons, and defendant's response offers support for why, as an example, Mr. Acevedo is a represented person. Plaintiffs offer nothing to rebut this showing.

Accordingly, plaintiffs' motion with respect to interrogatory No. 2 is denied.

      b.     Interrogatory No. 4

Plaintiffs seek the court to compel defendant to answer this interrogatory, which plaintiffs contend defendant wholly failed to answer. Defendant has identified in its initial disclosures various individuals, represented by the United States and not represented by the United States, who could

8

have witnessed Morgan's fall. To the extent defendant argues that the only response it should make to this interrogatory is people who "could have seen Morgan's fall," the court disagrees. The scope of interrogatory No. 4 as written is appropriate, as any individual who was present at the scene might have been subject to certain statutes or regulations, thus making the inquiry a relevant one under the scope of limited discovery. However, defendant's response notes that it cannot produce more witnesses because it is not aware of any others. The court cannot order to be produced something that does not exist. See Crosby v. City of Gastonia, No. 3:06-CV-462-C, 2007 WL 2733705 at *5 (W.D.N.C. Sept. 17, 2007).

Accordingly, to the extent that the information requested about individuals at the confidence course at the time of the incident is able to be determined, defendant is ordered to respond to Interrogatory No. 4 and produce all documents related to the same. To the extent such information does not exist, plaintiffs' request is denied.

        c.       Interrogatory No. 5

The court finds defendant's response to Interrogatory No. 5, elaborated upon in defendant's response to the instant motion, to be adequate. Without more, plaintiffs' request is denied.

        d.       Interrogatory No. 6

The thrust of plaintiffs' request with respect to this interrogatory is that defendant's privilege log (DE # 38-9), which describes three documents prepared for this litigation, insufficiently sets forth the claims of privilege with respect to these documents. Plaintiffs support their argument as to the insufficiency of the log with nothing more than the contention, "The information provided in the government's privilege log is insufficient to assess the applicability of the privileges claimed." (Pls.' First Mot. Compel 4.) In response, defendant cites to its privilege log to argue that it

9

sufficiently set forth the reasons that each document is privileged, and that the reports written by and for the attorneys of the United States are privileged as attorney client communications, attorneys' opinions and legal theories of the case, and work product prepared in anticipation of litigation.

A party asserting privilege has the burden of demonstrating its applicability. See United States v. Jones, 696 F.2d 1069, 1072 (4th Cir.1982) (per curiam). In claiming the attorney-client privilege, a party must satisfy procedural and substantive criteria. Procedurally, the party must "expressly make the claim" and "describe the nature of the documents . . . in a manner that, without revealing information itself privileged or protected, will enable other parties to assess the claim." Fed. R. Civ. P. 26(b)(5)(A). Substantively, a party must show that:

> (1) the asserted holder of the privilege is or sought to become a client; (2) the person to whom the communication was made (a) is a member of the bar of a court, or is his subordinate and (b) in connection with this communication is acting as a lawyer; (3) the communication relates to a fact of which the attorney was informed (a) by his client (b) without the presence of strangers (c) for the purpose of securing primarily either (I) an opinion on law or (ii) legal services or (iii) assistance in some legal proceeding, and not (d) for the purpose of committing a crime or tort; and (4) the privilege has been (a) claimed and (b) not waived by the client.

Jones, 696 F.2d at 1072 (quoting United States v. United Shoe Machinery Corp., 89 F. Supp. 357, 358-59 (D. Mass.1950)). And in claiming the work-product privilege, the party must demonstrate that the documents in question were created "in preparation for litigation." In re Grand Jury Proceedings, 33 F.3d 342, 348 (4th Cir.1994) (citing Hickman v. Taylor, 329 U.S. 495, 509-14, 67 S. Ct. 385, 91 L.Ed. 451 (1947)). When a party relies on a privilege log to assert these privileges, the log must "as to each document ... set[ ] forth specific facts that, if credited, would suffice to establish each element of the privilege or immunity that is claimed." Bowne, Inc. v. AmBase Corp.,

150 F.R.D. 465, 474 (S.D.N.Y.1993).  See N.L.R.B. v. InterBake Foods, LLC, 637 F.3d 492, 501-02

(4th Cir. 2011).

Here, defendant specifically references the three documents described in the privilege log,

which themselves are each described with specificity.  The court notes that the privilege log does

more than simply state that a document is confidential work product; instead, the log provides a

description of the document, the author, addressee, type of document, and the specific reasons

privilege is claimed.  Plaintiffs offer no specific argument directed at any particular document

challenging defendant's claim of privilege.  Considering the thoroughness of the log, and plaintiffs'

conclusory allegation that the privileged log is "insufficient," the court denies plaintiffs' request.

To the extent plaintiffs' request seeks information that is not privileged, plaintiffs have not shown,

nor is it immediately apparent from the briefs, how non-privileged information under Interrogatory

No. 6 is within the limited scope of discovery.  The request is denied.[4]

e.	Interrogatory No. 7

The interrogatory is a broad one; plaintiffs request defendant to identify "every military

facility" or installation where the United States conducts training on obstacles similar to the

confidence course.  Plaintiffs assert that they are entitled to the information requested in order to

properly evaluate defendant's claim of the discretionary privilege exception.  Defendant argues that

the request is impermissibly broad and is overly burdensome, as it would require defendant to

---

[4] To the extent plaintiffs' lodge a similar argument regarding defendant's claims of attorney work product and privilege with respect to requests for production 50, 57, 59, 60, 66 and 67, the motion is similarly denied.  Contrary to plaintiffs' representations that defendant "never identifies in its Privilege Log any document to which it actually claims privilege or protection," the court's review of the privilege log reveals the contrary to be true.  (Pls.' First Mot. Compel 8.)

11

conduct a search across several hundreds, if not thousands, of military facilities and personnel all around the world.

The court finds the arguments of both sides to be well taken. While plaintiffs' request is certainly impermissibly broad as written, the purpose of the limited discovery is to find whether the discretionary function exception applies in this case. While all of the information requested, from across all military facilities of all types across the world concerning obstacles of all types and for all purposes would undoubtedly lead to irrelevant and inadmissible information, the court finds that a more narrowly tailored approach could lead to relevant material.

In their motion, plaintiffs note that upon belief, the Department of the Navy, through its Navy Safety Center, exercises a level of management, control, and/or oversight over facilities like the confidence course. The court thus finds it appropriate to narrow the scope of plaintiffs' interrogatory No. 7 accordingly. As such, defendant is ordered to provide information and documents, to the extent any exist, regarding other military facilities or installations where the United States, through the Department of the Navy, through the Navy Service Center, conducts training for NROTC programs on multi-task series of obstacles containing any of the same or similar obstacles as the confidence course, and for each such facility or installation, state the names of the individual obstacles consisting of the multi-task series. Plaintiffs' request is granted in part.

f.      Interrogatory No. 8

The arguments surrounding this interrogatory are sufficiently similar to those surrounding interrogatory No. 7 to warrant the same finding by the court. The court again agrees with both sides, and finds it appropriate to compel defendant to produce, to the extent such information exists, something more than what it contends it should have to produce, but something less than what

plaintiffs request. As such, the request is granted in part, and defendant is ordered to identify persons who sustained injury or death as a result of falling from a height of greater than six feet when participating in an obstacle course operated by the United States, through the Department of the Navy, with respect to a NROTC program, and for each person, if any exist, to include the location where the injury occurred, the specific obstacle involved, the date, the military commander operating or controlling the obstacle course, and all related reports to the extent not privileged. Defendant shall also produce any documents related to the same, to the extent they exist.

As to plaintiffs' claim that upon information and belief other injuries occurred at the SFL preceding plaintiff Morgan's fall, the court agrees with defendant that plaintiffs must offer more detail if they are aware of such an incident. Where defendant has offered multiple times that it is aware of no such injury, the court declines to compel something that does not exist. If plaintiffs are aware of such, they must offer more.

Accordingly, the request as to interrogatory No. 8 is granted in part and denied in part.

g.      Interrogatory No. 11

Plaintiffs' interrogatory presupposes that defendant argues that no pads were required for use at the SFL. Defendant's response suggests that pads were used, and thus plaintiffs' request becomes confusing and arguably moot. Defendant further contends that it is unaware of any documents that respond to the request. Again, the court cannot compel something that does not exist. To the extent that documents do exist that reflect defendant's position that pads were not necessary at the SFL, the request is granted in limited part. Otherwise, the request is denied.

13

h.     Interrogatory No. 12

Plaintiffs argue that defendant's response to this interrogatory, which listed two specific individuals, does not include identifying information.  While plaintiffs cite no authority for the discovery of "identifying information" beyond that required by the Federal Rules, the court does grant the request in part to the extent defendant can provide contact information—addresses and telephone numbers— for the individuals noted.  See Fed. R. Civ. P. 26(a)(1).  Additionally, the court agrees that the general reference in defendant's response to document production is not helpful.  It will not take much effort from defendant to identify with specificity the documents in document production that are responsive to this particular interrogatory, especially if the production was not overly voluminous.  (See Def.'s Resp. Obj. Pls.' First Mot. Compel 19.)  As such, the court orders defendant to identify with specificity the specific documents produced that are responsive to this interrogatory.  As such, plaintiffs' request is granted.

i.     Interrogatory No. 15

Plaintiffs are dissatisfied with defendant's brief response to this interrogatory, even though the interrogatory was not objected to.  The court agrees with defendant that plaintiffs' argument seems to seek something different than what the interrogatory requests.  Nevertheless, to the extent defendant has not fully described the pertinent changes that occurred in late 2007 or 2008, or to the extent documents exist that describe the changes made, information and documents regarding the same are ordered to be produced to plaintiffs.  As such, the request is allowed in limited part, and denied in all other respects.

14

j. Plaintiffs' Requests for Production Nos. 12, 14, 17, 18, 23, 24, 25, 26, 30, 42, 47, 48, 49, 50, 54, 57, and 65

These requests seek "documents and information relating to the construction, design, operation, maintenance, and/or use of obstacle or confidence course structures throughout the armed forces." (Pls.' First Mot. Compel, 7.) The requests supplement or complement plaintiffs' interrogatories previously discussed in this order. Where the court has specifically granted plaintiffs' motion to compel as to certain interrogatories already in this order, the corresponding requests for documents regarding the same subject matter are granted to the extent provided herein. Otherwise, the requests for production are denied where they are outside the scope of the limited discovery.[5] The court is not unreasonably limiting the scope of discovery to the particular obstacle course on which plaintiff Morgan Kelly was injured; but rather is limiting discovery within the parameters of defendant's motion for judgment on the pleadings.

k. Plaintiffs' Requests for Production Nos. 50, 57, 59, 60, 66, and 67

These interrogatories seek documents and information relating to the construction, design, operation, maintenance, and/or use of obstacle or confidence course structures, as well as injuries sustained on such obstacles throughout the armed forces. As with the previous subsection, the requests supplement interrogatories previously discussed in this order. Where the court has specifically granted plaintiffs' motion to compel as to certain interrogatories, the corresponding request for documents is granted to the extent specified herein. Otherwise, the court finds the instant requests for production to be overly broad and outside of the scope of limited discovery. For instance, where request No. 59 seeks all documents relating to or pertaining to "any" risk assessment

---

[5] Throughout this order, where the court has granted certain discovery requests, it has also noted if the corresponding document request is also granted.

of "any" obstacle course or confidence course controlled by "any" branch of the armed forces, the court finds this request to be impermissibly broad, and plaintiffs offer no convincing argument as to why the material sought fits within limited discovery, or is even relevant.

To the extent plaintiffs' challenge defendant's assertions of privilege with respect to certain interrogatories, the court disagrees with plaintiffs' arguments, and references its previous discussion of defendant's privilege log.

l.      Plaintiffs' Request for Documents No. 52

Where the subject matter of the instant request is similar to that of interrogatory No. 15, the court references its discussion of interrogatory No. 15, and grants the request on a limited basis discussed therein. Otherwise, where plaintiffs do not offer more support as to how this request seeks documents falling within limited discovery, the request is denied.

2.      Second Motion to Compel

Plaintiffs' second motion to compel contains similar requests to those already discussed herein. The second motion to compel describes plaintiffs' efforts to conduct a deposition pursuant to Rule 30(b)(6), which plaintiffs did on December 12, 2011, with Captain Thomas M. Harris, USMC ("Captain Harris"). While Captain Harris appears to have addressed some topics of plaintiffs' inquiry, plaintiffs contend he did not address other topics, and they request the court to order defendant to produce an individual who can testify as to the unaddressed topics pursuant to Rule 30(b)(6). At issue again in the second motion to compel is the scope of the limited discovery currently ongoing, and the parties' divergent interpretations of the same.

### a.    Request for Production No. 78

Plaintiffs request a copy of each original signed release and waiver of liability and assumption of risk agreement for every participant who attended the JROTC orientation training program. Plaintiffs contend that the response to such a request would provide identifying and contact information for witnesses attending the orientation visit. Plaintiffs, however, fail to demonstrate how the information sought is relevant to the issues to be investigated in this limited period of discovery. Where such information regarding witnesses could be relevant at a later date in general discovery, the court denies the request without prejudice.

The court also addresses plaintiffs' arguments against defendant's use of the term "Navy JROTC." For the reasons previously set forth in this order regarding limiting the scope of discovery with regard to JROTC programs operated by the Department of the Navy, through the Navy Service Center, the court finds the term to be consistent with the scope of limited discovery.[6]

### b.    Requests for Production Nos. 80-87

Plaintiffs seek "'regulations, policies, procedures, instructions, manuals, or similar documents authorizing, requiring, relating, or pertaining to pre-injury exculpatory waivers or releases for injuries to Junior ROTC participants as a result of government negligence' . . . directed to different echelons of the federal government." (Pls.' Second Mot. Compel 3.) The "echelons of the federal government" of plaintiffs' request spans the Marines' Camp Lejeune policies all the way up to United States Department of the Interior policies. The court finds this request to be far too broad and, more importantly, outside of the scope of limited discovery. Plaintiffs cannot and have

---

[6] Plaintiffs' citation to the Department of Defense Instruction Number 1205.13 (Pls.' Second Mot. Compel Ex. H) does not provide support for a broader reading of "JROTC." Rather, it merely demonstrates that the JROTC program is a large one, and thus underscores the court's finding that allowing discovery into each of the respective branches' JROTC programs is, as previously discussed, far too broad for limited discovery.

not demonstrated that requests for information regarding "pre-injury exculpatory waivers or releases for injuries" fit into the limited scope of discovery for the discretionary function exception. Notably, plaintiffs' motion includes speculative assertions that such discovery "could" reveal underlying policy considerations and "could also" establish that a certain government policy exists. (Id.) Such speculation is not enough to warrant broad and burdensome discovery, and the motion is denied as to the requests.

           c.        Requests for Production Nos. 88, 119

Plaintiffs seek information regarding Marine Corps Base Camp Lejeune regulations, policies, procedures, instructions, manuals, or similar documents relating or pertaining to Camp Lejeune support of JROTC programs. Where the court has previously limited broad requests to Navy JROTC, the limited request here is more properly tailored. However, defendant represents that no such information exists and that it has no responsive documents. As stated repeatedly throughout this order, the court cannot compel what does not exist. However, to the extent specific documentation exists regarding the safety and support of NJROTC programs at Camp Lejeune, the court allows the request and grants plaintiffs' motion in part.

           d.        Request for Production No. 93

This request asks for all United States Department of Defense regulations, policies, procedures, instructions, manuals, or similar documents relating or pertaining to United States Navy Support of JROTC units or programs. While previous requests of a similar nature were appropriately limited to Camp Lejeune, the instant request is far too broad. Plaintiffs fail to offer argument as to why such a seemingly broad request fits into the limited discovery for the discretionary function exception, and the request is denied.

e.     Requests for Production Nos. 94-99

Similar request is again made here as to regulations, policies, procedures, instructions, manuals or similar documents relating or pertaining to United States Navy ("the Navy") support of Junior ROTC units and/or programs, except that the requests noted here specifically seek information from the Naval Safety Center, the Naval Service Training Command, and Chief, Naval Education Training ("CNET"). Where the court has previously limited the scope of certain requests in this order to NJROTC operated by the Navy, through the Navy Service Center, and each request seeks information about NJROTC programs or confidence course facilities operated by or under the purview of the same, the request is properly limited. To the extent the documents and information requested exists, plaintiffs' request is granted. The court reiterates, however, that its allowance of the instant request should not be read to reach to any other organization or branch of the United States armed forces.

f.     Requests for Production Nos. 114-124

Requests Nos. 114 through 118 seek information from Naval Service Training Command, CNET, the USMC, the Navy, and the Department of Defense regarding their "training safety programs[s]." Requests Nos. 119 through 124 seek information regarding the Junior ROTC training safety programs from the same organizations. In response to these requests, defendant offered citation to an Internet web address, http://safetycenter.navy.mil/. Plaintiffs' object to the response as nonresponsive.

The court agrees with plaintiffs that defendant's citation to the website noted above is nonresponsive. The court has reviewed the website and finds that while it may contain the information requested, it is not readily apparent that it does contain such information. Additionally,

the website contains a large amount of irrelevant information. Before going further, however, the court notes that plaintiffs' requests Nos. 114 through 118 are too broad for the scope of limited discovery. Plaintiffs fail to show how general "training safety programs" from each of the respective agencies or organizations are relevant to the instant matter, or, more importantly, appropriate for limited discovery. Responses to each of these requests would no doubt uncover a multitude of irrelevant information, as defendant's citation to the website suggests. As such, requests Nos. 114 through 118 are denied.

As for requests Nos. 119 through 123, the court finds these requests to be reasonably tailored as to subject matter (pertaining to JROTC safety) and organizations (within the Navy). As such, these requests are allowed. To the extent the website citation provided by defendant contains the requested documents, defendant is directed to specifically point out where the documents are or otherwise provide them.

Request No. 124 is denied as it is overly broad, and plaintiffs fail to show how the requested documents from the United States Department of Defense are within the scope of limited discovery.

g.       Rule 30(b) Deposition Notice

Plaintiffs ask the court to compel defendant to produce a representative to testify about various matters pursuant to Rule 30(b)(6). Defendant produced a representative, Captain Harris, who was subject to a Rule 30(b)(6) deposition on December 12, 2011. However, Captain Harris only testified about certain topics outlined in plaintiffs' Rule 30(b)(6) notice, and plaintiffs seek an

20

order from the court compelling defendant to produce a representative to testify about all of the topics.[7]

Plaintiffs' requests follow the same general pattern as their interrogatories and requests for production already addressed in great detail herein. The court agrees with defendant that broad requests for information from the Department of Defense and "various echelons of the government," are, in general, far too broad. Plaintiffs offer no support as to why such broad requests are within the limited scope of discovery. Similarly, plaintiffs fail to demonstrate how request No. 34, which inquires about repairs or modifications to the SFL, is relevant to the limited scope of discovery. The request is denied.

The court also denies Requests Nos. 8-13 for reasons previously set forth, to the extent these requests seek information that is privileged. Otherwise, the request is similarly denied where plaintiffs do not demonstrate how the requested information, if obtained through deposition testimony, would be relevant to the limited discovery of the discretionary function exception.

The court finds, however, that certain requests seek information from the Navy, and are arguably within the limited scope of discovery, also as previously discussed herein. As such, requests Nos. 15-18, 21-24, 26, and 29-32 are granted, consistent with other findings made herein. As such, defendant is directed to produce a representative who can testify as to these matters pursuant to Rule 30(b)(6) of the Federal Rules of Civil Procedure.

---

[7] The parties' briefs also reveal that certain requests for production were attached to plaintiffs' Rule 30(b)(6) notice, but that the 30-day response period that defendant was entitled to under Rule 30(b)(2), was not necessarily provided. Plaintiffs thus acknowledge that they recast the requests for production and that the same were served on defendant as plaintiffs' third requests for production, which are not at issue here. Thus, to the extent plaintiffs make a motion to compel information sought in the third requests for production, such motion is denied.

3.    Other Matters

The court once again reminds the parties of the procedural posture of this case, where dispositive motion filed by defendant has been stayed pending the resolution of the instant motions. As this order illustrates, this case has been marred by significant discovery disputes, largely stemming from the parties' disagreement as to the proper scope of limited discovery. Where defendant alludes to the fact that further discovery disputes are likely to arise, the parties are directed to the findings made herein as a guide for discovery in this case, particularly as to disputes that arise over the proper scope of limited discovery. Further motions to compel that seek court decision on issues clearly covered by the findings made herein will be summarily denied with reference made to the instant order.

To promote the efficient resolution of this case, the parties are directed to submit joint report within **twenty-one (21) days** of entry of this order outlining the status of discovery and offering proposed deadlines for plaintiffs' response to defendant's motion for judgment on the pleadings.

## CONCLUSION

For the foregoing reasons, and as set forth in detail herein, plaintiffs' motions to compel (DE # 37, 47) are GRANTED in part and DENIED in part. Plaintiffs' motions for oral argument are denied. Where plaintiffs' motions are granted, defendant shall serve the discovery to be produced within **fourteen (14)** days of entry of this order, unless otherwise agreed upon by the parties. The parties shall submit joint report proposing scheduling matters no later than **twenty-one (21) days** from date of entry of this order.

22

SO ORDERED, this the 14th day of March, 2012.

_____
LOUISE W. FLANAGAN
United States District Judge

23