IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
SOUTHERN DIVISION
7:10-CV-172-FL

MORGAN KELLY, et al., )
　　　　　　　　　　　　　　　　　　　)
　　　　Plaintiffs, )
　　　　　　　　　　　　　　　　　　　) **MEMORANDUM AND**
　v. ) **RECOMMENDATION**
　　　　　　　　　　　　　　　　　　　)
UNITED STATES OF AMERICA, )
　　　　　　　　　　　　　　　　　　　)
　　　　Defendant. )

　　　　This case comes before the court on the motion (D.E. 25) by defendant United States ("the government") for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. The motion has been fully briefed, and was referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B). (*See* Minute Entry dated 20 Apr. 2013). For the reasons set forth below, it will be recommended that the government's motion for judgment on the pleadings be denied.

## BACKGROUND

**I.　　CASE HISTORY**

　　　　On 2 September 2010, plaintiffs Morgan Kelly, Pamela Kelly, and Terry Kelly (collectively "plaintiffs") filed this action against the government pursuant to the Federal Tort Claims Act ("FTCA"), 28 U.S.C. §§ 2671, *et seq*. (Comp. (D.E. 1). The government filed its answer on 20 December 2010.[1] (Ans. (D.E. 14)). The court entered a Preliminary Case Management Order (D.E. 17) that allowed for a preliminary period of written discovery to be

---

[1] The government was allowed several extensions of time to file its answer. (D.E. 11, 13).

completed by 1 April 2011 (Pre. CMO § I.C.) and provided a deadline for Rule 12 motions (Pre. CMO § II.B.).

The government filed the instant motion for judgment on the pleadings (D.E. 25) on 6 July 2011 with a supporting memorandum (D.E. 26). Following discovery disputes relating to the motion, the court stayed briefing on it (*see* D.E. 49) pending resolution of two motions to compel filed by plaintiffs (D.E. 37, 47). On 14 March 2012, the court issued an order (D.E. 51) allowing the motions to compel in part and directing the parties to submit a proposed briefing schedule on the instant motion. Thereafter, the court entered an Amended Preliminary Case Management Order providing for discovery to be completed by 22 June 2012 on issues relating to the instant motion and directing plaintiffs to file their memorandum in opposition to the instant motion by 24 August 2012. (Am. Pre. CMO §§ I.1, I.2).

The court subsequently extended the time for plaintiffs to file their opposition memorandum (*see* D.E. 56, 66), and they timely filed it (D.E. 62) on 1 September 2012. The government filed its reply memorandum (D.E. 74) on 12 October 2012.

In the meantime, on 27 August 2012, plaintiffs had filed a motion (D.E. 57) to amend their complaint. The court allowed the motion to amend by order entered on 28 March 2013 (D.E. 77). In that order, the court directed the government, in light of the amendment permitted, to either file a supplemental brief in support of the instant motion or advise the court that it intended to rest on its prior submissions. (28 Mar. 2013 Order 5-6). Plaintiffs filed their amended complaint on 28 March 2013 (Am. Comp. (D.E. 78)). On 11 April 2013, the government filed a memorandum (D.E. 79) indicating its intention to rely on the arguments in its prior submissions. Accordingly, the government's instant motion for judgment on the pleadings is now ripe for review.

## II. PLAINTIFFS' CLAIMS

In their amended complaint, plaintiffs allege that Morgan Kelly, then a 15-year-old high school student, sustained injuries on 25 July 2007 when she fell off a Slide for Life obstacle tower at Marine Corps Base Camp Lejeune in Onslow County, North Carolina ("Camp Lejeune"). (Am. Compl. ¶ 4). Pamela Kelly and Terry Kelly are her parents. (*Id.* ¶ 7). Morgan Kelly was attending a paid Junior Reserve Officer Training Corps program being conducted by the Department of the Navy at Camp Lejeune at the time. (*Id.* ¶ 4). Plaintiffs claim that Morgan Kelly suffered serious and painful injuries as a result of her fall that were the result of the government's negligence or gross negligence. (*Id.* ¶ 6). Specifically, plaintiffs contend that the government was negligent in a number of ways, including by failing to: utilize any fall protection; train Morgan Kelly; remove dangerous obstructions; ensure that Morgan Kelly was physically capable of using the obstacle tower; comply with directives pertaining to the course and safety procedures; and warn Morgan Kelly or her parents of the risks.[2] (*Id.* ¶ 5). The

---

[2] In full, the Amended Complaint alleges that the negligent and/or grossly negligent acts or omissions by the government include:

> failing to utilize any form of fall protection for the climbing of a 40' obstacle tower; failure to train or pre-condition Morgan Kelly to properly perform the 40' obstacle tower; placing a dangerous and unprotected metal bar at the base of the 40' obstacle tower; failing to provide proper cushioning or other protective materials at the base of the 40' obstacle tower; failing to evaluate Morgan Kelly's ability to perform the 40' obstacle tower before undertaking it; conducting a highly strenuous multi-task obstacle course on the first day of the program without any acclimatization or training; conducting a highly strenuous obstacle course in high heat and humidity on the late afternoon of a long and physically demanding day that began in the early morning and included physical training, a separate multi-task obstacle course and drills with gas masks; failing to monitor whether Morgan Kelly was fatigued prior to performing the 40' obstacle tower; failing to properly supervise the 40' obstacle tower; failing to comply with applicable directives pertaining to the obstacle course (called the "Confidence Course") on which Morgan Kelly was injured; failing to comply with applicable directives pertaining to safety procedures and practices; failing to conduct required risk assessments as set forth in applicable directives; failing to exercise reasonable care for Morgan Kelly's safety by encouraging her, without sufficient safety measures, to attempt obstacles on the Confidence Course known by defendant to pose a risk of death and/or serious injury; failing adequately to warn Morgan Kelly or her parents that the obstacles she would be encouraged to attempt, including the 40' obstacle tower on which she was injured, were known by Defendant to pose a risk of death and/or

government denies plaintiffs' material allegations and further contends that the claims are barred by the discretionary function exception to the FTCA. (*See generally* Ans. to Compl. (D.E. 14); Gov. Mem. (D.E. 26) 4). It is the government's contention that plaintiffs' claims come within the discretionary function exception that form the basis of the instant motion.

## APPLICABLE LEGAL PRINCIPLES

### I. RULE 12 STANDARDS OF REVIEW

A party may assert a challenge to the court's subject matter jurisdiction at any point in the proceedings. *Henderson ex rel. Henderson v. Shinseki*, __ U.S. ___, 131 S. Ct. 1197, 1202 (2011) ("Objections to subject-matter jurisdiction, however, may be raised at any time. Thus, a party, after losing at trial, may move to dismiss the case because the trial court lacked subject-matter jurisdiction."); *United States v. Beasley*, 495 F.3d 142, 147 (4th Cir. 2007) ("[T]he lack of subject matter jurisdiction can be raised at any time."); *see also* Fed. R. Civ. P. 12(h)(3) ("If the district court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action."). Where such a challenge is asserted after the pleadings are closed, a motion for judgment on the pleadings under Rule 12(c) of the Federal Rules of Civil Procedure is an appropriate method to bring the matter before the court.[3] Fed. R. Civ. P. 12(c) ("After the pleadings are closed--but early enough not to delay trial--a party may move for judgment on the pleadings."). "'[I]f a party raises an issue of subject matter jurisdiction on his motion for judgment on the pleadings, the court will treat the motion as if it had been brought under Rule 12

---

serious injury; and such other negligence and/or gross negligence as may be shown at trial.

(Am. Compl. ¶ 5).

[3] The pleadings were closed when the government's Rule 12(c) motion was filed. Although the government has not filed an answer to the amended complaint, the court's and the parties' manifest contemplation is that proceedings on the government's motion would go forward based on the amended complaint.

4

(b)(1).'" *Newbrough v. Piedmont Reg'l Jail Auth.*, No. 3:10CV867-HEH, 2012 WL 169988, at *2 (E.D. Va. 19 Jan. 2012) (quoting 5A C. Wright & A. Miller, *Fed. Practice and Procedure* § 1367 (1990)).

Rule 12(b)(1) provides for dismissal of an action if the court lacks subject matter jurisdiction over it. Fed. R. Civ. P. 12(b)(1). The plaintiff bears the burden of showing federal jurisdiction on a Rule 12(b)(1) motion. *Richmond, Fredericksburg & Potomac R. Co. v. United States*, 945 F.2d 765, 768 (4th Cir. 1991); *Bio-Medical Applications of N.C., Inc. v. Elec. Data Sys. Corp.*, 412 F. Supp. 2d 549, 551 (E.D.N.C. 2006). In an action against the United States, this entails a requirement that a party demonstrate "'an unequivocal waiver of immunity.'" *Williams v. United States*, 50 F.3d 299, 304 (4th Cir. 1995) (quoting *Holloman v. Watt*, 708 F.32d 1399, 1401 (9th Cir. 1983)); *see also LeRose v. United States*, 285 Fed. Appx. 93, 96 (4th Cir. 2008) (noting that plaintiff asserting a FTCA claim must "prove an unequivocal waiver of sovereign immunity and the existence of subject matter jurisdiction"). "[T]he district court is to regard the pleadings as mere evidence on the issue, and may consider evidence outside the pleadings without converting the proceeding to one for summary judgment." *Richmond*, 945 F.2d at 768; *see also Evans v. B.F. Perkins Co.*, 166 F.3d 642, 647 (4th Cir. 1999) (non-conversion of motion). The court must grant the motion "only if the material jurisdictional facts are not in dispute and the moving party is entitled to prevail as a matter of law." *Richmond*, 945 F.2d at 768; *see also E.E.O.C. v. AMX Commc'ns, Ltd.*, Civ. No. WDQ-09-2483, 2011 WL 3555831, at *3 (D. Md. 8 Aug. 2011).

## II. FTCA AND DISCRETIONARY FUNCTION EXCEPTION

Under the doctrine of sovereign immunity, the United States is immune from suit absent waiver. *Kerns v. United States*, 585 F.3d 187, 194-95 (4th Cir. 2009); *see also United States v.*

5

*Mitchell*, 463 U.S. 206, 212 (1983) ("It is axiomatic that the United States may not be sued without its consent and that the existence of consent is a prerequisite for jurisdiction."). The FTCA "represents a limited congressional waiver of sovereign immunity for injury or loss caused by the negligent or wrongful act of a Government employee acting within the scope of his or her employment." *Medina v. United States,* 259 F.3d 220, 223 (4th Cir. 2001); *Logan v. Unknown Correctional Officer*, No. 5:10-CT-3173-FL, 2012 WL 255335, at *2 (E.D.N.C. 27 Jan. 2012) ("The FTCA is a waiver of the United States' sovereign immunity, which permits a claimant to sue the United States for 'the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment . . . .'") (quoting 29 U.S.C. § 2675(a)), *aff'd*, 509 Fed. Appx. 264 (4th Cir. 2013).

There are exceptions to the FTCA's limited waiver, including the discretionary function exception asserted here by the government as a jurisdictional bar to plaintiffs' claims. *See* 28 U.S.C. § 2680(a). The relevant portion of the FTCA provides as follows:

> The provisions of this chapter and section 1346(b) of this title [waiving immunity] shall not apply to--
>
> (a) Any claim . . . based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the Government, whether or not the discretion involved be abused.

*Id*. The FTCA is to be "strictly construed" with any ambiguities resolved in favor of the government. *Robb v. United States*, 80 F.3d 884, 887 (4th Cir. 1996). If the discretionary function exception applies, the court lacks subject matter jurisdiction over the asserted claims. *Holbrook v. United States*, 673 F.3d 341, 345 (4th Cir. 2012); *Butler v. United States*, No. 1:05CV1136, 2010 WL 731139, at *2 (M.D.N.C. 25 Feb. 2010) ("The Fourth Circuit has held that the proper practice is to dismiss for want of jurisdiction for purposes of the FTCA under Fed. R.

6

Civ. P. 12(b)(1) if the discretionary function exception applies.") (mag. judge's recomm.), *aff'd*, 1 Sept. 2010 Order (D.E. 51).

Courts apply a two-pronged test for application of the discretionary function exception. *United States v. Gaubert*, 499 U.S. 315, 323 (1991); *Smith v. Wash. Metro Area Trans.*, 184 Fed. Appx. 311, 314-15 (4th Cir. 2006) ("The Supreme Court has set forth a two-tiered analysis for determining whether official conduct is discretionary for purposes of § 2680(a)."). Both prongs must be satisfied for this exception to apply and jurisdiction thereby to be defeated. *Norris v. United States*, No. 5:10–CT–3026–FL, 2013 WL 756293, at * 5 (E.D.N.C. 28 Feb. 2013) ("Based upon the foregoing, the court finds that both prongs of the discretionary function test are satisfied. Thus, the discretionary function exception applies, and this portion of FTCA claim is dismissed for lack of subject matter jurisdiction.").

Under the first prong, the court questions "whether the governmental action complained of 'involves an element of judgment or choice.'" *Baum v. United States*, 986 F.2d 716, 720 (4th Cir. 1993) (quoting *Berkovitz v. United States*, 486 U.S. 531, 536 (1988)). Action is considered discretionary if it does involve an element of judgment. *Berkovitz*, 486 U.S. at 536. Conversely, action is not deemed discretionary "when a federal statute, regulation, or policy specifically prescribes a course of action for an employee to follow" and the employee "has no rightful option but to adhere to the directive." *Berkovitz*, 486 U.S. at 536 ("[I]f the employee's conduct cannot appropriately be the product of judgment or choice, then there is no discretion in the conduct for the discretionary function exception to protect."); *Smith*, 184 Fed. Appx. at 315 ("[W]here an agency official contravenes internal agency guidelines that impose mandatory duties, the discretionary functions exception poses no bar to the government's liability."); *Perkins v. United States*, 55 F.3d 910, 914 (4th Cir. 1995) ("Obviously, failure to perform a *mandatory* function is

7

not a *discretionary* function.").

Under the second prong, the court must determine whether the exercise of judgment at issue is of the type that the discretionary function exception was designed to shield, that is, "'governmental actions and decisions based on considerations of public policy.'" *Gaubert*, 499 U.S. at 323 (quoting *Berkovitz*, 486 U.S. at 537). Indeed, "the purpose of the exception is to 'prevent judicial 'second-guessing' of legislative and administrative decisions grounded in social, economic, and political policy through the medium of an action in tort.'" *Gaubert*, 499 U.S. at 323 (quoting *United States v. Varig Airlines*, 467 U.S. 797, 814 (1984)). This inquiry focuses not on the subjective intent of the agent, but rather involves an assessment "of the challenged decision in an objective, or general sense, and ask[s] whether that decision is one which we would expect inherently to be grounded in considerations of policy." *Baum*, 986 F.2d at 721.

As the parties invoking federal subject matter jurisdiction, plaintiffs bear the burden of showing that the discretionary function exception to the FTCA does not apply. *Indem. Ins. Co. of North America v. U.S.*, 69 F.3d 175, 180 (4th Cir. 2009) ("Plaintiffs bear the burden of proving that the discretionary function exception does not apply"); *West v. U.S.*, No. 2:12cv535, 2013 WL 2404819, at *5 (E.D. Va. 31 May 2013) ("The plaintiff bears the burden of proving the discretionary function exception does not apply."). More specifically, to demonstrate jurisdiction, plaintiffs must show that at least one prong of the discretionary function exception is not satisfied. *See Suter v. United States*, 441 F.3d 306, 310-11 (4th Cir. 2006) (noting that if first prong is met, the court then must consider whether second prong is met before deciding if exception applies).

8

## ANALYSIS

I. **FIRST PRONG--WHETHER THE GOVERNMENTAL ACTION INVOLVED AN ELEMENT OF JUDGMENT OR CHOICE**

Plaintiffs contend that the first prong of the test for application of the discretionary function exception is not satisfied because there exist a number of mandatory policies applicable to the conduct of the government at issue and the government's actions therefore did not involve an element of judgment or choice. The government counters that, in fact, there is no federal statute, regulation, or policy that specifically governs the activity at issue, which it characterizes as the construction and maintenance of the Slide for Life, and that its alleged actions therefore did involve an element of judgment or choice. In support, the government submitted the declaration of Thomas M. Harris, a Captain in the United States Marine Corps stationed at Camp Lejeune whose job duties include being responsible for the management, maintenance, and supervision of the Slide for Life, to confirm that contention. (Harris Dec. (D.E. 27) ¶¶ 2, 3).

Review of each of the policies on which plaintiffs rely shows that, contrary to plaintiffs' contention, they do involve an element of judgment or choice. For example, plaintiffs point to a document entitled "Camp Lejeune Orientation Visit Information." (Orientation Visit Doc. (D.E. 62-2)). This document is directed to civilian groups[4] interested in scheduling a visit and notes that "the Safety of all visitors to Camp Lejeune is paramount." (*Id.* 2). The document also states that participants in the confidence course[5] "must wear ankle supportive boots and long pants to participate in this event." (*Id.* 4).

For purposes of this motion, the government does not dispute that Morgan Kelly was

---

[4] For example, the document refers to "your visit," states that "a staff member of our office will contact you," and advises visitors what items are provided. (Orientation Visit Doc. 1-2).

[5] The Slide for Life is an obstacle on the confidence course at Camp Lejeune. (Harris Dec. ¶ 2).

9

wearing sneakers at the time of her fall from the Slide for Life. (Gov. Reply 4). It argues, though, that this document is not an official policy, but instead merely an informational memorandum.

The court finds the government's contentions persuasive. Plaintiffs have not established that the information in the document specifically directs the conduct of government personnel, particularly because the document is not addressed to government personnel, but civilian visitors. Moreover, the document specifically states that the information contained in it "is a general guideline to use when requesting a visit aboard Marine Corps Base, Camp Lejeune, North Carolina." (Orientation Visit Doc. 1).

Plaintiffs also point to a 14 March 2001 policy message, ALMAR 010/01, entitled "USMC Policy on the Safety of Civilian Guests." (ALMAR 010/01 (D.E. 62-11). This document states that if civilian visitors are permitted to operate any item of military equipment, the item must be "operated safely and under direct supervision of DOD employees or military personnel." (*Id.* ¶ 1). While ALMAR 010/01 does specifically prohibit a number of dangerous activities,[6] it does not prohibit the use of obstacles such as the Slide for Life. The lack of any mandate or directive about ensuring safety with respect to the equipment at issue suggests a level of discretion or choice being left to the government regarding its use. *Baum*, 986 F.2d at 721-22 n.2 (holding that directives to "provide a . . . safe and suitable approach for passenger-vehicle traffic" or place "[s]ubstantial railings along each side of the bridge" were "far too general" to serve as mandatory regulations within the context of the discretionary function exception); *Newbrough,* 2012 WL

---

[6] It prohibits civilian visitors from "(a) throwing live hand grenades. (b) using diversionary devices (i.e. flash bangs/pyrotechnics. (c) participating in live-fire in a shooting house (close quarter battle). (d) participating in live-fire on maneuver ranges while units are maneuvering. (e) fast rope/rappelling from helicopters/spie rigging. (f) parachuting. (g) other activities as determined by a commander that could cause or reasonably be perceived as causing, an increased safety risk." (ALMAR 010/01 ¶ 3).

169988, at *4 ("Where such a statute or regulation imposes only a general duty on a federal agency, the discretionary function exception may still apply if the agency retains sufficient discretion in carrying out that duty."); *Strong v. Dyar*, 573 F. Supp. 2d 880, 886 (D. Md. 2008) ("Enactment of a regulation or the issuance of an order by the military creates no ministerial obligation of enforcement nor does it constitute an undertaking of an obligation for the benefit of the general public.").

Plaintiffs also argue that the government's "Naval Safety Center High-Risk Training Checklist for Confidence and Obstacle Courses" (High-Risk Training Checklist (D.E. 62-12)) contained a number of applicable inspection and operational requirements. The government has produced evidence that this checklist was not employed by Marines at Camp Lejeune. (Capt. Harris Dep. (D.E. 74-2) 35:15-24; 112:19 to 113:12; Lawrence Joseph Jacobs Dep. (D.E. 74-1) 30:10 to 36:21; Bobby Blackwell Dep. (D.E. 74-3) 32:16 to 33:14). Thus, the court agrees with the government that plaintiffs have not established that this document constitutes a policy that the government was mandated to follow as pertains to the incident forming the basis of the amended complaint. Nor is there clear evidence that the document, even if applicable, would constitute a required checklist for civilian use of the Slide for Life.

Plaintiffs additionally cite to the "Camp Lejeune Commanding Officer's Policy Statement" (Camp Lejeune Policy (D.E. 62-14). This document states that "[w]e must include safety and risk management as part of every task process, and operation" and notes that "all personnel involved in training or the execution of an event are safety officers" who must "challenge, stop, or raise the issue to your chain of command whenever an unsafe action occurs or is about to occur." (*Id.*). The court agrees with the government that this document cannot be viewed as a mandatory directive and that it leaves great discretion in terms of the safety principles to which it relates.

11

*Logan*, 2012 WL 255335, at *3 (holding that where Bureau of Prisons employees were allowed discretion in how they provided for inmate safety and protection pursuant to a statute requiring such protection and safekeeping, the first prong of the discretionary function test was satisfied).

Plaintiffs also point to the "Marine Physical Readiness Training for Combat" document (D.E. 62-15) as one that required the government to prohibit individuals "who have neither practiced the basic skills nor run the conditioning obstacle course to participate in the confidence obstacle course." (Marine Readiness § 3803(b)(6)). Again, the court agrees with the government that this document cannot serve as a mandate. It itself states that it is not a directive, but a reference for all Marines in developing physical readiness for combat. (*Id.* ¶ 2). In addition, because this document concerns guidance for Marines, and not civilian visitors, its ability to serve as a mandate here is also negated.

Finally, plaintiffs point to the "Naval Service Training Command ("NSTC") Occupational Safety and Health and High-Risk Training Safety Policies and Procedures" (D.E. 62-16) and argue that it required the government to ensure that training was conducted with minimum risk to teachers and students. (NSTC Policy ¶ 5h). Again, this document contains only general safety information and is devoid of any clear directives that would remove the element of judgment or choice from those deciding how to maintain and oversee obstacles such as the Slide for Life.

The court concludes that the governmental actions complained of in the amended complaint was discretionary and that the first prong of the discretionary function exception test is therefore satisfied. This finding does not end the analysis, however. The court must still proceed to determine whether the second prong is satisfied since, if it is not, the discretionary

function exception to the FTCA would not apply even though the first prong is met.[7]

## II. SECOND PRONG--WHETHER THE GOVERNMENTAL ACTION WAS BASED ON PUBLIC POLICY CONSIDERATIONS

Plaintiffs contend that the second prong of the discretionary function test is not met here because the government's conduct was not grounded in social, economic, or political policy considerations. The government argues that its alleged conduct was based on public policy considerations. On this point, the court agrees with plaintiffs.

As an initial matter, the court certainly acknowledges the government's right to exercise wide discretion with respect to training military personnel on the Slide for Life and in other endeavors. Indeed, where challenged decisions involve professional military judgment, such decisions are entitled to the highest deference. *Minns v. United States*, 155 F.3d 445, 451 (4th Cir. 1998) ("We should note that when discretionary decisions are ones of professional military discretion, they are due the courts' highest deference.") (citing *Tiffany v. United States*, 931 F.2d 271, 277 (4th Cir. 1991) ("Of the legion of governmental endeavors, perhaps the most clearly marked for judicial deference are provisions for national security and defense.")). "[T]he 'complex, subtle, and professional decisions' of how to protect American soldiers in time of war and how to administer such protection are decisions that are 'essentially professional military judgments,' overseen by the Legislative and Executive Branches." *Id.* (quoting *Tiffany*, 931 F.2d at 278). However, "'the military does not enjoy a blanket exemption from the need to proceed in

---

[7] In response to plaintiffs' motion to compel, the government argued that if the court found the first prong of the discretionary function exception was met (*i.e.*, that nothing stripped the government of its discretion to construct and operate the Slide for Life), the court would not need to consider whether the second prong was satisfied (*i.e.*, whether the government exercised its discretion pursuant to public policy considerations). (Gov. Opp. Mem. (D.E. 44) 2-3). The court rejected that argument in its order on plaintiffs' motions to compel. (14 Mar. 2012 Order (D.E. 51) 6-7). The court stated, "when the court decides the applicability of the discretionary function exception, if no statute exists under the first prong proscribing conduct, then the court will move to the second step, contrary to what defendant's response suggests." (*Id.* 7).

13

a non-negligent manner,' and particularly when 'acting in a civil area, national defense interests may be more remote and the military faces different restrictions.'" *C.H. v. United States*, No. 5:11-CV-364-F, 2013 WL 2433461, at *5 (E.D.N.C. 4 Jun. 2013) (quoting *Tiffany*, 931 F. 2d at 280).

A recent case from this district, *C.H.*, 2013 WL 2433461, is instructive. In *C.H.,* a minor plaintiff was attending the North Carolina State Fair with his parents and visited a display run by the North Carolina National Guard. 2013 WL 2433461, at *2. The display included the exhibition of a Bradley Fighting Vehicle ("BFV") and several National Guard members were supervising when the minor plaintiff entered the vehicle. *Id.* Once the minor plaintiff was inside the BFV, the fire suppression system activated, causing burns to his back and injuries to his skull and face. *Id.* The minor plaintiff and his parents asserted a claim for negligence against the government based on its purported failure to deactivate the fire suppression system, warn visitors of the unsafe conditions, maintain the BFV in a safe condition, and post warnings of the danger presented by entry into the BFV. *Id.* The court found that there was no statute or regulation removing the exercise of discretion and that the first prong of the discretionary function exception was met. *Id.* at *6.

The court found, however, that plaintiffs had shown that the second prong was not met. *Id.* The court first noted various decisions relating to the BFV display at issue that were based on public policy considerations:

> [I]f Plaintiffs' allegations concerned merely the discretionary decisions about the manner in which the BFV was maintained and managed by the military or the personnel decisions of the military, the court would be inclined to agree with the government that this action falls within the discretionary function exception of the FTCA. Whether or not to erect a National Guard display at the North Carolina State Fair, how many service members the military would send to a National Guard display, what kinds of service members the military would send to a National

14

> Guard display, whether or not to include a BFV exhibit in a National Guard display, and whether or not to disable certain components of the BFV exhibit (including the fire suppression system) are all discretionary decisions that involve maintenance and deployment of military equipment and personnel that are surely policy driven and therefore shielded by the discretionary function exception.

*Id.*

The court then concluded that the decisions implicated by plaintiffs' allegations were not of this type:

> [The allegations] implicate the discretionary decisions of the service members manning the National Guard display regarding whether or not to allow civilian visitors (including children) to enter the BFV exhibit, what kind of warning to give civilian visitors (including children) entering the BFV exhibit, and what level of supervision the civilian visitors (including children) entering the BFV exhibit should receive *in light of* the maintenance, management, and personnel decisions that had been made. Such discretionary decisions are not subject to a policy analysis; therefore, they are not of the kind that the discretionary function exception was designed to shield.

*Id.*

Similarly here, evaluation of plaintiffs' allegations in an objective or general sense, as required, shows that the governmental conduct at issue does not relate to the manner in which the Slide for Life was constructed, maintained, or operated by the military for military use. Plaintiffs' allegations also do not implicate the government's decisions to invite civilian plaintiffs to attend orientation visits at federal facilities, or generally how to staff or supervise such visits. Instead, plaintiffs' allegations implicate the particular decisions made by government personnel as to whether or not to allow civilian minors invited upon the property to use the Slide for Life, what kinds of warnings to or training for civilian minor invitees was warranted before the government consents to their use of the Slide for Life, and what type of supervision of civilian minor invitees using the Slide for Life was warranted. These particular decisions are not based on considerations of public policy.

15

The second prong for application of the discretionary function exception has therefore not been satisfied. The discretionary function exception accordingly does not apply to deprive the court of subject matter jurisdiction over plaintiffs' claims under the FTCA. *See Gotha v. United States*, 115 F.3d 176, 181-82 (3d Cir. 1997) (holding claims of independent contractor injured at Navy facility could go forward where government's failure to provide safeguards on pathway was not the result of legitimate policy considerations); *Nazzaro v. United States*, 304 F. Supp. 2d 605, 618 (D.N.J. 2004) (rejecting discretionary function exception where a civilian independent contractor was injured on a government facility on the basis that plaintiff was not challenging discretion of government to allow civilian access but instead for breach of duty owed when it failed to provide instruction and supervision, which is "an issue of common law landowner duty, not policy discretion"); *cf. Hawes v. United States*, 409 F.3d 213, 216 (4th Cir. 2005) (finding that a Marine's decision not to complete repairs on an obstacle course over a holiday weekend implicated economic and military policy, and thus claims of unsupervised civilian injured as a result were barred by discretionary function exception); *Tiffany*, 931 F.2d at 278-80 (finding no subject matter jurisdiction over claims of civilian pilot killed as a result of actions taken during actual military defense endeavors); *Ayer v. United States*, 902 F.2d 1038, 1043 (1st Cir. 1990) (holding that decision not to include safety railings at Air Force missile launch site was supported by evidence showing policy considerations and discretionary function exception applied). This conclusion, of course, has no bearing on the government's ultimate liability on the merits of plaintiffs' claims.

## **CONCLUSION**

For the foregoing reasons, IT IS RECOMMENDED that the government's motion for judgment on the pleadings (D.E. 25) be DENIED.

IT IS ORDERED that that the Clerk send copies of this Memorandum and Recommendation to counsel for the respective parties, who have until 9 September 2013 to file written objections. Failure to file timely written objections bars an aggrieved party from receiving a de novo review by the District Judge on an issue covered in the Memorandum and Recommendation and, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the District Judge. Any response to objections shall be filed no later than seven days after service of the objections, but in no event later than 16 September 2013, whichever is earlier.

This, the 30th day of August 2013.

_____
James E. Gates
United States Magistrate Judge