IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
SOUTHERN DIVISION

NO. 7:10-CV-172-FL

| | |
|---|---|
| MORGAN KELLY, PAMELA KELLY, and TERRY KELLY, | ) ) ) |
| Plaintiffs, | ) ) |
| v. | ) ) |
| UNITED STATES OF AMERICA, | ) ) |
| Defendant. | ) ) ) |

ORDER

This matter comes before the court on defendant's motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6).[1] The issues raised are ripe for decision. For the following reasons, the court grants defendant's motion to dismiss.

## BACKGROUND

This case has a lengthy history, and the court refers to and incorporates statements of the case provided in previous orders. Pertinent to the instant motion, plaintiffs commenced this action on September 2, 2010, pursuant to the Federal Tort Claims Act ("FTCA"), 28 U.S.C. §§ 2671, *et seq.*, seeking damages in excess of ten million dollars ($10,000,000.00) for injuries allegedly suffered by plaintiff Morgan Kelly, daughter of plaintiffs Terry Kelly and Pamela Kelly.

In July 2007, plaintiff Morgan Kelly, then a fifteen (15) year old high school student, was a cadet in the Navy Junior Reserve Officer Training Corps ("NJROTC") program at her high school.

---

[1] There is also pending a motion for summary judgment, filed by the government. This order does not address that motion concerning remaining claims.

As part of the program, she attended a session conducted by defendant at Marine Corps Base Camp Lejeune ("Camp Lejeune"). During that visit, plaintiff Morgan Kelly participated in training activities involving an obstacle course known as the "Confidence Course." On the last obstacle, called the "Slide for Life," plaintiff Morgan Kelly fell as she was climbing and suffered injuries.

The amended complaint alleges seriatim the following acts or omissions that plaintiffs assert comprise defendant's negligence or gross negligence:

> failing to utilize any form of fall protection for the climbing of a 40' obstacle tower; failure to train or pre-condition Morgan Kelly to properly perform the 40' obstacle tower; placing a dangerous and unprotected metal bar at the base of the 40' obstacle tower; failing to provide proper cushioning or other protective materials at the base of the 40' obstacle tower; failing to evaluate Morgan Kelly's ability to perform the 40' obstacle tower before undertaking it; conducting a highly strenuous multi-task obstacle course on the first day of the program without any acclimatization or training; conducting a highly strenuous obstacle course in high heat and humidity on the late afternoon of a long and physically demanding day that began in the early morning and included physical training, a separate multi-task obstacle course and drills with gas masks; failing to monitor whether Morgan Kelly was fatigued prior to performing the 40' obstacle tower; failing to properly supervise the 40' obstacle tower; failing to comply with applicable directives pertaining to the obstacle course (called the "Confidence Course") on which Morgan Kelly was injured; failing to comply with applicable directives pertaining to safety procedures and practices; failing to conduct required risk assessments as set forth in applicable directives; failing to exercise reasonable care for Morgan Kelly's safety by encouraging her, without sufficient safety measures, to attempt obstacles on the Confidence Course known by defendant to pose a risk of death and/or serious injury; failing adequately to warn Morgan Kelly or her parents that the obstacles she would be encouraged to attempt, including the 40' obstacle tower on which she was injured, were known by Defendant to pose a risk of death and/or serious injury; and such other negligence and/or gross negligence as may be shown at trial.

(Am. Compl. ¶5).

On November 25, 2013, defendant timely filed the instant motion to dismiss the gross negligence claim, along with a motion for summary judgment on plaintiffs' remaining claims. Additional discovery ensued upon plaintiff's request up to and until May 30, 2014. The court turns

2

its attention below to the motion to dismiss now before it.

## COURT'S DISCUSSION

A.  Standard of Review

The purpose of a Rule 12(b)(6) motion to dismiss for failure to state a claim upon which relief can be granted is to eliminate claims that are factually or legally insufficient. Fed. R. Civ. P. 12(b)(6); Ashcroft v. Iqbal, 556 U.S. 662, 678-79 (2009); Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). To survive a motion to dismiss, a pleading must contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Iqbal, 556 U.S. at 678 (quoting Twombly, 550 U.S. at 570).

In evaluating whether a claim is stated, "a court accepts all well-pled facts as true and construes these facts in the light most favorable" to the plaintiff, but does not consider "legal conclusions, elements of a cause of action, and bare assertions devoid of further factual enhancement." Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc., 591 F.3d 250, 255 (4th Cir. 2009). Nor must the court accept "unwarranted inferences, unreasonable conclusions, or arguments." Id. In other words, this plausibility standard requires a petitioner to articulate facts, that, when accepted as true, demonstrate that the petitioner has stated a claim that makes it plausible he is entitled to relief. Francis v. Giacomelli, 588 F.3d 186, 193 (4th Cir. 2009) (quoting Iqbal, 556 U.S. at 678, and Twombly, 550 U.S. at 557).

B.  Analysis

Defendant argues that dismissal of plaintiffs' gross negligence claim is warranted because the allegations of the complaint are insufficient to meet the standard for gross negligence under

3

North Carolina law.[2] At the outset, plaintiffs argue that the court's previous order granting plaintiffs' motion to amend over defendant's futility objection already concluded that the amended complaint was sufficient to withstand a motion to dismiss. Kelly v. United States, No. 7:10-CV-172, at 4-5 (E.D.N.C. March 28, 2013) ("March 2013 Order"). However, the March 2013, Order addressed whether government immunity would defeat the court's subject matter jurisdiction. Id. It did not specifically address whether the factual allegations were sufficient to meet North Carolina's standard for gross negligence. Accordingly, the court now considers the complaint in light of North Carolina case law on this issue.

North Carolina defines gross negligence as "wanton conduct done with conscious or reckless disregard for the rights and safety of others." Yancey v. Lea, 354 N.C. 48, 52 (2001). The difference between ordinary negligence and gross negligence

> is not in degree or magnitude or inadvertence or carelessness, but rather is [in] intentional wrongdoing or deliberate misconduct affecting the safety of others. An act or conduct rises to the level of gross negligence when the *act* is done purposely and with knowledge that such act is a breach of duty to others, i.e., a *conscious* disregard of the safety of others.

Ray v. N.C. Dep't of Transp., 366 N.C. 1, 13 (2012) (quoting Yancey, 354 N.C. at 53).

The conduct alleged here does not rise to the level of gross negligence. In particular, plaintiffs have failed to allege an act committed "purposely" with "conscious disregard for the safety of others." Ray, 366 N.C. at 13. Plaintiffs' complaint recites a litany of "failures" on the part of defendant's employees. While these failures may speak to the degree or magnitude of carelessness,

---

[2] Under the FTCA, the defendant is liable in tort "in the same manner and to the same extent as a private individual under like circumstances." 28 U.S.C. § 2674. In such actions, "federal courts apply the substantive law of the state in which the act or omission giving rise to the action occurred." Myrick v. United States, 723 F.2d 1158, 1159 (4th Cir. 1983). Because the alleged act or omission giving rise to the action occurred in North Carolina, North Carolina law governs the nature and extent of the government's liability for plaintiffs' injuries.

4

they do not establish that defendant's employees acted with the requisite mental state.

The large majority of cases dealing with gross negligence in North Carolina have involved motor vehicles. Most typical are cases where a defendant driver was intoxicated, driving at excessive speeds, or engaged in a racing competition. See Yancey, 354 N.C. at 53-54 (citing cases). In Yancey, the evidence supported that the defendant began to pass the decedent at or about the same time decedent signaled an intent to turn left, leading to a collision between the vehicles. Id. at 50, 57. Defendant acknowledged that he chose to pass, although he could have stopped behind the decedent's automobile and waited to determine what maneuver she would make. Id. at 56. The court held that this was insufficient to show gross negligence, as it failed to manifest "conduct in conscious and intentional disregard of the rights and safety of others." Id. at 57.

In articulating the gross negligence standard, Yancey quoted from Hinson v. Dawson, 244 N.C. 23 (1956), explaining that "this Court, in references to gross negligence, has used that term in the sense of wanton conduct." Yancey 354 N.C. 48, 53 (quoting Hinson, 244 N.C. at 28). The plaintiff in Hinson alleged that the defendant driver had "defective vision, and was incapable, if he had tried to do so, of seeing and apprehending the dangers inherent to the operation of a motor vehicle," and further described the driver's conduct as in "reckless and wanton disregard of and indifference to the rights and safety" of the plaintiff. Hinson, 244 N.C. at 28-29. Furthermore, the plaintiff alleged that the co-defendant, the driver's father, had "full knowledge of this defect of vision." Id. The court held that these allegations were sufficient to support an allegation of wanton conduct (i.e. gross negligence). Id.

In Ray, the plaintiffs alleged that an erosion defect in a road caused the decedents to lose control of their vehicle and crash into an oncoming automobile. Ray, 366 N.C. at 3. Plaintiffs

5

alleged that the defect had existed "for a substantial period of time before the accident," and the court assumed that the defendant Department of Transportation ("DOT") was required by statute to inspect state roads for safety. Id. at 12. The court held that plaintiffs' allegation that the erosion defect "had existed for a substantial period of time prior to the collision," gave rise to an inference that the defendant DOT intentionally avoided traveling on or inspecting the road. Id. at 12-13. It further held that, "[t]hat inference, combined with the awareness that an uninspected road can present a danger to travelers, is sufficient to support a claim for gross negligence at this stage." Id.

Moving outside the context of motor vehicles, the court in Sawyer v. Food Lion, Inc., 144 N.C. App. 398 (2001), considered a plaintiff's claim for gross negligence concerning injuries suffered from the defendant's failure to cover holes in a grocery store floor. Id. at 403. The plaintiff had reported the holes to a job superintendent for the defendant, who warned him to "be careful." Id. at 400. The court held that the conduct complained of was not wanton and did not rise to the level of gross negligence. Id. at 403.

These cases illustrate that certain types of facts may permit an inference that defendants acted "purposely" with "conscious disregard" for the safety of others, while others do not. Failure over an extended period of time to perform a statutory duty to protect the public may represent such facts. Ray, 366 N.C. at 13. Allowing an individual with a known and substantial vision defect to drive a car is another example. Hinson, 244 N.C. at 28-29. Passing a vehicle at the same time it turns on its signal does not, Yancey, 354 N.C. at 57, nor does failing to cover holes in a grocery store floor which are known to the plaintiff. Sawyer, 144 N.C. App. at 403. While this case presents a closer call than Yancey or Sawyer, the court concludes the facts alleged are ultimately insufficient to permit an inference of acts or omissions performed "purposely" with "conscious disregard" for safety.

6

The one item of knowledge that the complaint alleges is that defendant knew the obstacles on the Confidence Course "pose a risk of death and/or serious injury." (Am. Compl. ¶ 5). However, there is a difference between acknowledging a "risk" and acknowledging that a situation is "unsafe" or dangerous. An activity can hardly be considered "unsafe" unless it threatens an individual with a *significant* risk of harm. See Indus. Union Dep't, AFL-CIO v. Am. Petroleum Inst., 448 U.S. 607, 642 (1980). "'Safe' is not the equivalent of 'risk-free.' There are many activities that we engage in every day-such as driving a car or even breathing city air-that entail some risk of accident or material health impairment; nevertheless, few people would consider these activities 'unsafe.'" Id.

In Sawyer, the defendant knew that leaving the holes in the grocery store floor posed a risk of injury, as evidenced by the supervisor's warning to plaintiff. Id. at 400. Yet defendant's failure to replace the holes was not found to constitute gross negligence. Id. at 403. Similarly, in Yancey the defendant undoubtedly knew that his vehicle posed a risk of serious injury under certain circumstances; however, the failure to provide evidence that he knew that his driving was actually unsafe in the particular circumstances of the accident disclosed, at most, simple negligence. See Yancey, 354 N.C. 56-57. See also Conway v. Hi-Tech Eng'g, Inc., 381 S.W. 3d 56, 65 (2011) (holding that evidence did not meet North Carolina standards to show gross negligence, although defendant admitted it was foreseeable that people could be killed by the machine that killed plaintiff's son.).

If anything, the allegations in the amended complaint establish that defendant's employees lacked knowledge of an unsafe condition posed to plaintiff Morgan Kelly. The complaint alleges that the employees acted with gross negligence in "failing to evaluate" her ability to perform the obstacle tower, and in "failing to monitor whether Morgan Kelly was fatigued prior to" climbing the

7

obstacle tower. (Am. Compl. ¶ 5). Such allegations indicate that these employees had no knowledge that plaintiff Morgan Kelly was unfit to perform the obstacle course. The complaint makes no allegation that plaintiff Morgan Kelly exhibited any signs permitting an inference that defendant's employees were aware she was not in a condition to surmount the Slide for Life. This is not sufficient factual matter to establish a "conscious disregard" for her safety.

Plaintiffs allege that defendant failed to comply with a number of "applicable directives," including directives "pertaining to the obstacle course," "pertaining to safety procedures and practices," and requiring "risk assessments." (Am. Compl., ¶5). Cases have analyzed a failure to follow rules or policies in the context of claims alleging conduct that surpasses ordinary negligence. Such cases indicate that the mere failure to follow such rules or policies is not sufficient. For instance, violation of a building code, standing alone, is not gross negligence. Cacha v. Montaco, Inc., 147 N.C. App. 21, 33 (2001); Bashford v. N.C. Licensing Bd. for Gen. Contractors, 107 N.C. App. 462, 467 (1992).

In another case involving motor vehicles, Snow v. Oneill, No. 1:04-CV-681, 2006 WL 1837910, at *3 (M.D.N.C. June 5, 2006), a truck driver, knowing that he was violating his employer's requirements, failed to employ reflective triangles when parking his truck on the side of the road to sleep. Id. at *3. The court held that his failure to follow this requirement, along with other evidence that he knew cars had hit trucks parked outside the lanes of travel, and his knowledge that a rest area was around two miles up the highway, was sufficient to support claims of gross negligence and punitive damages on summary judgment. Id.

In contrast, in Faris v. SFX Entertainment, Inc., No. 3:04-CV-8, 2006 WL 3690632, at *3 (W.D.N.C. Dec. 12, 2006), the defendant admitted that employees had varied from unspecified

8

policies that required the communication and sharing of information. However, the court noted that "no evidence has been adduced to show that the defendant consciously and intentionally chose to disregard established policies and procedures that were in place to protect the safety of customers from the injury suffered by the decedent with knowledge of the consequences of such disregard." Id. at *5. The court found the evidence insufficient to support plaintiff's claim for punitive damages on summary judgment. Id. at *8. Although a claim for punitive damages requires "clear and convincing" evidence of "willful and wanton" conduct, which has been defined as conduct "more egregious than gross negligence," N.C. Gen. Stat. § 1D-5(7), the case is nevertheless instructive in requiring evidence that the defendant not only violated policies and procedures, but violated them with the requisite level of awareness.

In this case, the requisite level of awareness requires that acts be done "purposely" and with "conscious disregard" for safety. Ray, 366 N.C. at 13. There are no allegations that those responsible for the program purposely and consciously failed to comply with directives, or that they were conscious that failure to comply with these directives threatened the safety of plaintiff Morgan Kelly. Moreover, plaintiffs fail to allege who promulgated these directives, what particular directives "pertaining to the obstacle course" or "pertaining to safety procedures and practices" were violated, how these directives were violated, what type of "risks" defendant failed to assess, or to explain how any of these violations resulted in plaintiff Morgan Kelly's injury. Facts must contain "sufficient factual matter" to state a claim. Iqbal, 556 U.S. at 678. These facts are insufficient to draw an inference that defendant's employees violated these directives with the requisite state of mind to establish a gross negligence claim.

Plaintiffs cite Folwell v. Sanchez Hernandez, No. 1:01-CV-1061, 2003 WL 21418098, at

9

*1 (M.D.N.C. May 7, 2003), where the court held that the plaintiffs had presented enough evidence to allow her claim for punitive damages to proceed beyond summary judgment when a driver struck a child on the way to a school bus. The court held that, based on the evidence, "a jury could find that Sanchez realized that a child might be near, was conscious that her automobile posed a danger to that child, and simply disregarded the danger by speeding past the bus without even slowing down." Id. at *10. The court noted that the defendant "at least recognized a need to slow her car to preserve [the child's] right to safety . . . . This alone is a conscious disregard of [the child's] safety." Id. Again, as detailed, there are no similar allegations in the complaint establishing that defendant was conscious of a danger to plaintiff Morgan Kelly.

Plaintiffs' memorandum in opposition to defendant's motion to dismiss includes additional allegations concerning defendant's conduct and defendant's awareness of dangers to plaintiff Morgan Kelly. However, a plaintiff may not amend complaint through argument in briefing. See Bratcher v. Pharm. Prod. Dev., Inc., 545 F.Supp. 2d 533, 542 (E.D.N.C.2008) (finding plaintiff "cannot use her brief to amend her complaint") (citing Car Carriers, Inc. v. Ford Motor Co., 745 F.2d 1101, 1107 (7th Cir.1984) ("[I]t is axiomatic that the complaint may not be amended by the briefs in opposition to a motion to dismiss."); In re aaiPharma Inc. Sec. Litig., 521 F.Supp. 2d 507, 514 (E.D.N.C.2007); Barclay White Skanska, Inc. v. Battelle Mem'l Inst., No. 07–1084, 2008 WL 238562, at *6 (4th Cir. Jan. 29, 2008) ("A plaintiff may not amend her complaint through argument in a brief opposing summary judgment." (internal quotation omitted))). Thus, the court will not consider these additional allegations.

In sum, plaintiffs' allegations fail to set forth facts necessary to support that defendant performed an act "purposely" with "conscious disregard" for plaintiff Morgan Kelly's safety.

Therefore, the allegations are insufficient to state a claim for gross negligence under North Carolina law.

## CONCLUSION

For the reasons set forth above, the court GRANTS the motion to dismiss plaintiffs' claim for gross negligence. (DE 93).

SO ORDERED, this the 18th day of August, 2014.

_____
LOUISE W. FLANAGAN
United States District Judge